IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AGM MARINE CONTRACTORS, INC., )<br>)<br>Defendant. ) | CIVIL ACTION NO. 04-11382-EFH |

**AGM MARINE CONTRACTORS, INC.'S STATEMENT OF MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, the following is a statement of the material facts as to which there is no genuine issue to be tried:

1. The Town of Provincetown (the "Town") contracted with AGM for the reconstruction of MacMillan Pier (the "Project") which required, in part, the installation of a concrete floating dock system (the "Docks"). See Mikutowicz Aff. at ¶ 3.

2. The Docks were manufactured by a subcontractor, Southeast Floating Docks, Inc. ("Southeast"), to meet the plans and specifications issued by the Town. See Mikutowicz Aff. at ¶ 4.

3. Installation of the Docks by AGM was completed in June 2003. See Mikutowicz Aff. at ¶ 5.

4. AGM also constructed a concrete pier, installed pilings and performed dredging work as part of the Project. See Mikutowicz Aff. at ¶ 6.

5. The construction and installation of the Docks were only a portion of the overall Project, albeit, important to the functioning of the marina. See Mikutowicz Aff. at ¶ 7.

6. Over the weekend of December 5th through December 7th, 2003, the Docks were severely damaged during a winter storm (the "Storm") which produced winds in excess of 50 mph together with waves of approximately two feet in height. See Mikutowicz Aff. at ¶ 8.

7. The damages were most pronounced in what is known as the finger sections of the Docks, which protrude out from the main walkway, which Docks broke loose and suffered failure at the hinges. See Mikutowicz Aff. at ¶ 9.

8. AGM was subsequently directed by the Town, on December 8, 2003, to immediately dispatch emergency crews and equipment and capture the Docks that had broken free during the Storm and posed nautical hazards to the boats in the marina or otherwise constituted a hazard in navigable waterways. See Mikutowicz Aff. at ¶ 10.

9. AGM was also directed by the Town to salvage and secure whatever portions of the Docks remained in place. See Mikutowicz Aff. at ¶ 11.

10. AGM subsequently brought a crane to the site and began to remove the sections of the Docks which had failed and ultimately was required by the Town to transport same for storage. See Mikutowicz Aff. at ¶ 12.

11. AGM kept track of its "Time and Materials" costs for performing the emergency response and salvage work, as well as the cost of transporting the materials to the

Town's storage facility, which such costs and expenses totaled in excess of $250,000. See Mikutowicz Aff. at ¶ 13.

12. The Town alleges that Southeast failed to manufacture the Docks in accordance with the design parameters, breaching its warranties and leading to the failure during the Storm and the damages resulting therefrom. See Mikutowicz Aff. at ¶ 14.

13. The damage to the Docks has hindered the Town's ability to operate the marina and secure income from its operation. See Mikutowicz Aff. at ¶ 15.

14. At the request of the Town, to mitigate damages suffered and loss of use of the marina, AGM was required to install temporary docking facilities. See Mikutowicz Aff. at ¶ 16.

15. The Town alleges that AGM and its subcontractors failed to manufacture the Docks in accordance with the design specifications, and such failure caused the Docks to suffer damage as a result of the Storm. See Mikutowicz Aff. at ¶ 17.

16. The Town seeks from AGM indemnification as well as repair and/or replacement of the Docks. See Mikutowicz Aff. at ¶ 18.

17. AGM denies that it deviated from the contract specifications or the direction of the Town's engineers or that it has breached any such warranties flowing to the Town in connection with AGM's completed work. See Mikutowicz Aff. at ¶ 19.

18. AGM neither owned, nor rented the marina or any property constituting the Project. See Mikutowicz Aff. at ¶ 22.

19. The Plaintiff insurer issued a Commercial Marine Liability insurance policy (the "Policy") for the Project, covering the period from January 1, 2003 through

January 1, 2004. A true, complete and accurate copy of the Policy is attached as Exhibit 1 to the Mikutowicz Aff.

20. It is undisputed that, when AGM entered into the Contract, no party had a reasonable expectation that such a storm would occur that could damage the Docks or that the Docks were manufactured in such a way that they could not withstand the Storm. See Mikutowicz Aff. at ¶ 20.

21. The Owner, AGM and its subcontractor assumed that the design for the floating docks and specifications for the Contract were adequate; otherwise, the Owner would not have permitted construction to begin, AGM would not have installed the Docks, the subcontractor would not have constructed the Docks, and the insurers would not have issued the Policy. See Mikutowicz Aff. at ¶ 21.

22. The Policy's grant of coverage is broad, covering "those sums the Assured becomes legally obligated to pay as damages because of… 'property damage' to which the insurance applies." Mikutowicz Aff., Ex. 1 at p. 7.

23. The Policy applies to that property damage that is caused by an "occurrence" that happens within the Policy period. Mikutowicz Aff., Ex. 1 at p. 7.

24. Moreover, "property damage" as defined in Section 8 of the Coverage Form, Definitions provides that it shall mean:

   a. Physical damage to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Mikutowicz Aff., Ex. 1 at p. 28.

25. As the general contractor for the Project, AGM provided labor, materials and services (including labor, services and materials provided by independent subcontractors) which are included under and defined in Section 8 of the Coverage Form, Definitions as follows:

> "The Assured's work" means:
> a. Work or operations performed by the Assured or on the Assured's behalf;
> b. Materials, pads or equipment furnished in connection with such work or operations.
>
> "The Assured's work" includes:
> a. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "the Assured's work"; and
> b. The providing of or failure to provide warnings or instructions.

Mikutowicz Aff., Ex. 1 at p. 29.

26. Coverage under the policy is explicitly extended to insure "Products Hazard or Completed Operations Hazard or with respect to liability arising out of independent contractors" in an aggregate limit of One Million Dollars ($1,000,000.00). Mikutowicz Aff., Ex. 1 at p. 28.

27. Section 8 of the Coverage Form, Definitions provides, in pertinent part, that:

> (17) "Products-completed operations hazard":
> a. Includes all… "property damage" occurring away from premises the Assured owns or rents and arising out of "the Assured's work"…

Mikutowicz Aff., Ex. 1 at p. 27.

28. Within Section 1 of the Coverage Form, the "Damage to Property" exclusion, section (2)(i) provides, in pertinent part, that the insurance does not apply to:

> "Property damage" to: … (6) That particular part of any property that must be restored repaired or replaced because "the Assured's work" was incorrectly performed on it.

However, this exclusion, paragraph 6, explicitly "does not apply to 'property damage' included in the 'products-completed operations hazard.'" Mikutowicz Aff., Ex. 1 at p. 9-10.

29. The "Damage to the Assured's Work" exclusion, section 2(k) states that the insurance does not apply to:

> "Property Damage" to: "the Assured's Work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the Assured's behalf by a subcontractor.

Mikutowicz Aff., Ex. 1 at p. 10.

30. American denies the existence of an "occurrence" resulting in "property damage." A true, complete and accurate copy of the denial letter is attached as Exhibit 2 to the Mikutowicz Aff.

Respectfully submitted,

**AGM MARINE CONTRACTORS, INC.**

By its attorneys,

_/s/_
Eric Eisenberg, Esq. (BBO #544682)
Jeremy Blackowicz, Esq. (BBO #650945)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
(617) 345-9000

DATED: April 22, 2005

#524275

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April, 2005, I have served a true copy of the above document, via first-class mail, postage pre-paid, to the following counsel of record:

>Robert Murphy, Esq.
>Holbrook & Murphy
>150 Federal Street
>Boston, MA 02110

_____
Jeremy Blackowicz

#524275                                    7