IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>AGM MARINE CONTRACTORS, INC., )<br><br>Defendant. ) | CIVIL ACTION NO. 04-11382-EFH |

### AFFIDAVIT OF JOHN MIKUTOWICZ IN SUPPORT OF AGM MARINE CONTRACTORS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, John Mikutowicz, do hereby depose and state as follows:

1. I am President of AGM Marine Contractors, Inc. ("AGM") and state the following based upon my own personal knowledge.

2. I have worked in the construction industry for approximately 30 years.

3. The Town of Provincetown (the "Town") contracted with AGM for the reconstruction of MacMillan Pier (the "Project") which required, in part, the installation of a concrete floating dock system (the "Docks").

4. The Docks were manufactured by a subcontractor, Southeast Floating Docks, Inc. ("Southeast"), to meet the plans and specifications issued by the Town. Southeast was charged with the responsibility of reviewing the Project specifications, including the design and performance criteria, and manufacturing a dock system that complied therewith. Southeast thereafter constructed the Docks and provided installation guidelines and instructions to AGM.

5. Installation of the Docks by AGM was completed in June 2003.

6. AGM also constructed a concrete pier, installed pilings and performed dredging work as part of the Project.

7. The construction and installation of the Docks were only a portion of the overall Project, albeit, important to the functioning of the marina.

8. Over the weekend of December 5th through December 7th, 2003, the Docks were severely damaged during a winter storm (the "Storm") which produced winds in excess of 50 mph together with waves of approximately two feet in height.

9. The damages were most pronounced in what is known as the finger sections of the Docks, which protrude out from the main walkway, which Docks broke loose and suffered failure at the hinges.

10. AGM was subsequently directed by the Town, on December 8, 2003, to immediately dispatch emergency crews and equipment and capture the Docks that had broken free during the Storm and posed nautical hazards to the boats in the marina or otherwise constituted a hazard in navigable waterways.

11. AGM was also directed by the Town to salvage and secure whatever portions of the Docks remained in place.

12. AGM subsequently brought a crane to the site and began to remove the sections of the Docks which had failed and ultimately was required by the Town to transport same for storage

13. AGM kept track of its "Time and Materials" costs for performing the emergency response and salvage work, as well as the cost of transporting the materials to the Town's storage facility, which such costs and expenses totaled in excess of $250,000.

14. The Town alleges that Southeast failed to manufacture the Docks in accordance with the design parameters, breaching its warranties and leading to the failure during the Storm and the damages resulting therefrom.

15. The damage to the Docks has hindered the Town's ability to operate the marina and secure income from its operation.

16. At the request of the Town, to mitigate damages suffered and loss of use of the marina, AGM was required to install temporary docking facilities.

17. The Town alleges that AGM and its subcontractor failed to manufacture the Docks in accordance with the design specifications, and such failure caused the Docks to suffer damage as a result of the Storm.

18. The Town seeks from AGM indemnification as well as repair and/or replacement of the Docks.

19. AGM denies that it deviated from the contract specifications or the direction of the Town's engineers or that it has breached any such warranties flowing to the Town in connection with AGM's completed work.

20. It is undisputed that, when AGM entered into the Contract, no party had a reasonable expectation that such a storm would occur that could damage the Docks or that the Docks were manufactured in such a way that they could not withstand the Storm.

21. The Owner, AGM and its subcontractor (and, presumably, the Plaintiff insurer) assumed that the design for the floating docks and specifications for the Contract were adequate; otherwise, the Owner would not have permitted construction to begin, AGM would not have installed the Docks, the subcontractor would not have constructed the Docks and American Home Assurance Company would not have issued the Policy.

22. AGM neither owned, nor rented the marina or any property constituting the Project.

23. Attached hereto as <u>Exhibit 1</u> is a true and accurate copy of the Commercial Marine Liability insurance policy (the "Policy") purchased by AGM, including additional Products-Completed Operations Hazard coverage for, the Project, covering the period from January 1, 2003 through January 1, 2004.

24. Attached hereto as <u>Exhibit 2</u> is a true and accurate copy of the denial letter from American Home Assurance Company denying the claims asserted by AGM.

SIGNED UNDER THE PENALTIES OF PERJURY this 14 day of April, 2005.

_____
John Mikutowicz