**American International Marine Agency**

## SECTION 6 - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most the Company will pay regardless of the number of:

   a. Assureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most the Company will pay for the sum of:

   a. Medical expenses under SECTION 3;

   b. Damages under SECTION 1, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under SECTION 2.

   d. Amounts recoverable under SECTION 4.

3. The Products-Completed Operations Aggregate Limit is the most the Company will pay under SECTIONS 1 and 4 for damages because of "bodily injury" and "property damage" included in the products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most the Company will pay under SECTIONS 2 and 4 for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most the Company will pay for the sum of:

   a. Damages under SECTIONS 1 and 2;

   b. Medical expenses under SECTION 3;

   c. Amounts recoverable under SECTION 4.

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most the Company will pay under SECTION 1 for damages because of "property damage" to premises, while rented to Assured or temporarily occupied by Assured with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most the Company will pay under SECTION 3 for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

)677 (10/00)

# American International Marine Agency

## SECTION 7 – COMMERCIAL MARINE LIABILITY GENERAL CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the Assured or of the Assured's estate will not relieve the Company of its obligations under this policy.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. Assured must see to it that the Company is notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when, and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any Assured, the Assured must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify the Company as soon as practicable.

      Assured must see to it that the Company receives written notice of the claim or "suit" as soon as practicable.

   c. Assured and any other involved Assured must:

      (1) Take such steps to minimize and avoid liability, before and after any casualty or occurrence, as would be taken by a prudent uninsured person;

      (2) Immediately send the Company copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (3) Authorize the Company to obtain records and other information;

      (4) Cooperate with the Company in the investigation or settlement of the claim or defense against the "suit"; and

      (5) Assist the Company, upon the Company's request, in the enforcement of any right against any person or organization, which may be liable to the Assured because of injury or damage to which this insurance may also apply.

   d. No Assured will, except at that Assured's own cost, voluntarily make a payment, assume any obligation, make any admission of liability, or incur any expense, other than for first aid, without the Company's consent.

   e. The Company shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim covered by this Policy, and in any event, the Company shall direct the progress of such litigation or negotiations.

   f. · If the Assured shall fail, or refuse, to settle any claim as authorized by the Company, the liability of the Company shall be limited to the amount for which settlement could have been made plus legal fees and disbursements incurred (subject to SECTION 6 of this policy) to the date the Assured fails or refuses to settle any such claim, less the amount of any deductible provided for in this Policy. If thereafter any amount is recovered against the Assured

3677 (10/00)



# American International Marine Agency

in excess of the amount of any settlement authorized by the Company (less the deductible), such excess amount, plus any additional legal fees and disbursements, shall be solely for account of the Assured.

3.  Notice Of Occurrence

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involved injuries or damages which in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent to:

> A.I. MARINE ADJUSTERS, INC.
> 99 High Street, 29th Floor
> Boston, MA 02110-2320

as soon as practicable, provided, however, that failure to notify the above firm of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

4.  Legal Action Against The Company

No person or organization has a right under this policy:

a.  To join the Company as a party or otherwise bring the Company into a "suit" asking for damages from an Assured; or

b.  To sue the Company on this policy unless all of its terms have been fully complied with.

A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an Assured obtained after an actual trial; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the Assured and the claimant or the claimant's legal representative.

5.  Other Insurance

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is excess of the insurance afforded by this policy, the Insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this policy subject to the terms and conditions and limitations of other insurance.

6.  Premium Audit

a.  The Company will compute all premiums for this policy in accordance with the Company's rules and rates.

b.  Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period the Company will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Assured

c.  The first Named Assured must keep records of the information the Company needs for premium computation, and send the Company copies at such time as the Company may request.

7.  Representations

By accepting this policy, the Assured agrees:

3677 (10/00)

# American International Marine Agency

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations the Assured made to the Company; and

c.  The Company has issued this policy in reliance upon the Assured's representations.

8.  Separation Of Assureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Assured, this insurance applies:

a.  As if each Named Assured were the only Named Assured; and

b.  Separately to each Assured against whom claim is made or "suit" is brought.

9.  Inclusion of Additional Assureds or Loss Payees

Wherever additional assureds or loss payees are added to this policy it is specifically agreed:

a)  Such additional assureds or loss payees are included only with respect to such activities insured by this policy as would exist in the absence of the naming of additional assureds or loss payees and coverage hereunder shall in no way be considered extended by the inclusion of additional assureds or loss payees.

b)  The inclusion of additional assureds or loss payees in no way increases the limit of liability hereunder.

c)  In the event of cancellation or change in policy coverage unless specifically endorsed in writing to the contrary hereon, no obligation is imposed on the Company to send notice of cancellation or change of coverage to an additional assured or loss payee and notice to the First Named Assured shall discharge all obligations of the Company hereunder.  The Company shall not be required to notify additional named assureds or loss payees of any cancellation received from the First Named Assured hereon.

10. Subrogation

If the Assured has rights to recover all or part of any payment the Company has made under this policy, those rights are transferred to the Company. The Assured must do nothing after loss to impair such rights.  At the Company's request, the Assured will bring "suit" or transfer those rights to the Company and assist the Company in the enforcement of such rights.

11. Assignment

Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Assured shall die, such insurance as is afforded by this policy shall apply (1) to the Assured's legal representative, as the Assured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Assured, to the person having proper temporary custody thereof, as Assured, but only until the appointment and qualification of the legal representative.

12. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop the Company for asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

3677 (10/00)

# American International Marine Agency

## SECTION 8 - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title, trade dress or slogan in the Assured's advertising.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by the Assured in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on the Assured's business; and

      (2) The Assured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement the Company agrees to.

5. "Defense costs" means the legal and investigative costs, fees, and expenses, including attorneys' fees, which are incurred in the process of handling a claim presented under this policy. Defense costs do not include salaries and expenses of the Company's employees, other than employed attorneys, or salaries and expenses of the Assured's "employees".

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by the Assured's charter, constitution, by-laws or any other similar governing document.

8. "Gross Receipts" means the gross amount of money charged by the Named Assured for "The Assured's Product" and "The Assured's Work" during the Policy Period, and includes:
   a) taxes, other than taxes which the Named Assured collects as a separate item and remits directly to a governmental division.
   b) cost of subcontractor(s)

677 (10/00)

# American International Marine Agency

9.  "Impaired property" means tangible property, other than "the Assured's product" or "the Assured's work", that cannot be used or is less useful because:

    a.  It incorporates "the Assured's product" or "the Assured's work" that is known or thought to be defective, deficient. inadequate or dangerous; or

    b.  The Assured has failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement. adjustment or removal of "the Assured's product" or "the Assured's work"; or

    b.  The Assured's fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to Assured or temporarily occupied by Assured with permission of the owner is not an "Insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to the Assured's business (including an indemnification of a municipality in connection with work performed for a municipality) under which Assured assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

    (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders; change orders or drawings and specifications: or

        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (3) Under which the Assured. if an architect. engineer or surveyor, assumes liability for an injury or damage arising out of the Assured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

---

AGM Marine Contractors. Inc.                     Page 25                    Commercial Marine Liability
Policy No: B2291                                                                        January 1, 2003

3677 (10/00)

 **American International Marine Agency**

11. "Leased worker" means a person leased to the Assured by a labor leasing firm under an agreement between the Assured and the labor leasing firm, to perform duties related to the conduct of the Assured's business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

13. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises the Assured owns or rents;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not 'mobile equipment" but will be considered "autos':

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

# American International Marine Agency

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one occurrence, and shall be deemed to occur only when such damage first commences.

15. "Payroll" means the total remuneration paid to each employee for services rendered during the policy period excluding executive officers engaged primarily in clerical operations and excluding extra wages paid for overtime.

16. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

17. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises the Assured owns or rents and arising out of "the Assured's product" or "the Assured's work" except:

      (1) Products that are still in the Assured's physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "the Assured's work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in the Assured's contract has been completed.

         (b) When all of the work to be done at the job site has been completed if the Assured's contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by the Assured, and that condition was created by the "loading or unloading" of that vehicle by any Assured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

 **American International Marine Agency**

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

18. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    Tangible Property shall not mean computerized or electronically stored data or software.

19. "Short-rate return premium" shall be defined to mean the amount obtained by multiplying the pro rata return premium times 90%.

20. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury' to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the Assured must submit or does submit with the Company's consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Assured submits with the Company's consent.

21. "Temporary worker" means a person who is furnished to the Assured to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

22. "The Assured's product" means:

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1) The Assured;

        (2) Others trading under the Assured's name; or

        (3) A person or organization whose business or assets the Assured has acquired; and

    b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    "the Assured's product" includes:

        (1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "the Assured's product"; and

        (2) The providing of or failure to provide warnings or instructions.

    "the Assured's product" does not include vending machines or other property rented to or located for the use of others but not sold.

# American International Marine Agency

23. "The Assured's work" means:

   a.  Work or operations performed by the Assured or on the Assured's behalf; and

   b.  Materials, pads or equipment furnished in connection with such work or operations.

   "the Assured's work" includes:

   a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "the Assured's work"; and

   b.  The providing of or failure to provide warnings or instructions.

 # American International Marine Agency

ENDORSEMENT NO.: 1                    EFFECTIVE: 12:01 A.M., January 1, 2003.

ATTACHED TO AND FORMING PART OF POLICY NO.: B2291.

OF THE: AMERICAN HOME ASSURANCE COMPANY.

ISSUED TO: AGM Marine Contractors, Inc.

---

### POLLUTION LIMITATION ENDORSEMENT
### (SUDDEN & ACCIDENTAL BASIS)

Effective January 1, 2003, and in consideration of an Additional Premium of $Included, it is agreed that Common Exclusion (j) is deleted and replaced by the following:

Notwithstanding any other provision of this policy or of any underlying insurance, this policy of insurance is not evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar Federal or State Laws. Any showing or offering of this policy by the Assured as evidence of insurance shall not be taken as any indication that the Underwriters consent to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Underwriters DO NOT CONSENT TO BE GUARANTORS OR SUED DIRECTLY.

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met:

(A)   the discharge, dispersal, release or escape was accidental and was neither expected nor intended  by the Assured. A discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Assured.

(B)   The discharge, dispersal, release or escape can be identified as commencing at a specific time and date during the term of this policy.

(C)   The discharge, dispersal, release or escape became known to the Assured within 72 hours after its commencement.

(D)   The discharge, dispersal, release or escape was reported in writing to these underwriters within 30 days after having become known to the Assured.

(E)   The discharge, dispersal, release or escape did not result from the Assured's intentional and willful violation of any government statute, rule or regulation.

Nothing contained in this endorsement shall operate to provide any coverage with respect to:

(1)   loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Assured;

(2)   removal of, loss of or damage to subsurface oil, gas or any other substance;

(3)   fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

(4)   any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances.

ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED SIGNATURE
AMERICAN INTERNATIONAL MARINE AGENCY

---

AGM Marine Contractors, Inc.                    Page 30                    Commercial Marine Liability
Policy No: B2291                                                             January 1, 2003

1677 (10/00)



# American International Marine Agency

ENDORSEMENT NO.: 2                              EFFECTIVE: 12:01 A.M., January 1, 2003.

ATTACHED TO AND FORMING PART OF POLICY NO.: B2291.

OF THE: AMERICAN HOME ASSURANCE COMPANY.

ISSUED TO: AGM Marine Contractors, Inc.

---

### LANDING DOCK BAILEE LIABILITY COVERAGE ENDORSEMENT

Effective January 1, 2003, and in consideration of an Additional Premium of $Included, it is agreed that exclusions f. and i (4) are deleted with respect to non-owned vessels only and the following are substituted therefor:

1.  This insurance is to cover the legal liability of the Assured upon the terms and conditions and subject to the limitations hereinafter set forth.

    A.  This insurance covers the legal liability of the Assured for loss or damage to vessels, craft, and equipment, cargoes, freights, and other interests on board, which are in their care, custody or control at or in the vicinity of **Fish Island, New Bedford, MA**

    B.  This insurance also covers the legal liability of the Assured for loss or damage to property other than that referred to in paragraph A hereof caused by said vessels or craft and their cargoes, which are in their care, custody or control.

2.  No claim shall be payable under this policy unless the aggregate liability of the Assured arising out of the same accident or occurrence, and insured against hereunder, exceeds the sum of **$As per policy for all claims, except $As per policy for Pollution claims** and this sum shall be deducted from the amount payable hereunder on account of liability arising from each such accident or occurrence.

3.  Notwithstanding anything to the contrary contained in this policy, it is hereby expressly understood and agreed that this insurance does not cover any liability:

    A.  For death or personal injury;

    B.  Arising out of the loading or off-loading of any watercraft;

    C.  Accepted under a charter party;

    D.  For demurrage, delay, loss of time, loss of freight, loss of charter and/or similar and/or substituted expenses;

    E.  For loss, damage or expense which may be recoverable under any other insurance inuring to the benefit of the Assured except as to any excess over and above the amount recoverable thereunder;

    F.  loss, damage or expense arising out of the operation of any vessel or craft owned or operated by the Assured or any affiliated or subsidiary concern or individual or party;

    G.  To property owned, leased or rented to the Assured or utilized by the Assured in its business;

    H.  To vessels or craft stored by the Assured;

    I.  For loss, damage or expense caused by or resulting from strikes, lock-outs, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder;

    J.  For vessel repair, construction, alteration, conversion or gas freeing;

    K.  For loss damage, injury or expense which may be recoverable under any other insurance carried by the Assureds or by others for account of the Assureds except insurance covering part of this risk insured in conjunction herewith, or any excess insurance over and above the amount recoverable hereunder;

4.  This endorsement is issued in consideration of:

 **American International Marine Agency**

An annual Minimum and Deposit premium of $Included Dollars. The Assured shall keep an accurate record of the vessels in respect of which insurance is provided hereunder, which record shall be open to examination by representatives of this Company at all times during business hours during the term of this policy or thereafter, and further agrees to report to this Company on an Annual basis on or before thirty (30) days after the preceding 12 months, the total amount thereof for the preceding 12 months or such period as is within the term of this policy. The earned premium hereunder to be computed thereon at the rate of $As per policy per vessel, per call., and applied against the minimum and deposit premium until same is exhausted, following which all further earned premium shall be due and payable to this Company at time of filing the report on which the earned premium is due. This Company shall have the right of set off against the claims payable under this policy of any premium due hereunder.

In the event that this endorsement is adjustable based on barge or vessel days, each twenty-four (24) hours is to be deemed a barge or vessel day and any fraction of a day in excess of twelve (12) hours also to be deemed a barge or vessel day.

5.  Definitions:

"Throughput" means products which is shipped from, or delivered from, the Assured's premises. Where two terminal locations are connected by an owned pipeline, these shall be treated as one premise.

"Tonnage":
   "Gross Tonnage shall mean total internal carrying capacity of a vessel expressed in measurement tons (one measurement ton = 100 cu. ft).
   "Net Tonnage" shall mean Cargo carrying capacity of a vessel in measurement tons (one measurement ton = 100 cu. ft.).

6.  Attached to and forming part of Policy No. B2291 of the **AMERICAN HOME ASSURANCE COMPANY** but it is understood and agreed that the terms of this form are substituted for those of the policy form to which this is attached, the latter being hereby waived except for those provisions required by law to be inserted in the policy.

ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED SIGNATURE
AMERICAN INTERNATIONAL MARINE AGENCY

 # American International Marine Agency

ENDORSEMENT NO.: 3                               EFFECTIVE: 12:01 A.M., January 1, 2003.

ATTACHED TO AND FORMING PART OF POLICY NO.: B2291.

OF THE: AMERICAN HOME ASSURANCE COMPANY.

ISSUED TO: AGM Marine Contractors, Inc.

---

### EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT

SCHEDULED LIMITS OF LIABILITY:

$ 1,000,000        Each Claim

$ 1,000,000        Aggregate

I.    EMPLOYEE BENEFITS LIABILITY COVERAGE

The Company will pay on behalf of the Assured all sums in excess of the deductible amount which the Assured shall become legally obligated to pay as damages on account of any claim against the Assured arising out of any negligent act or omission within the policy territory, in the administration of the Named Assured's Employee Benefit Programs, provided such claim is first made against the Assured during the period this insurance is in force and the Assured at the effective date of this insurance had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

This Company shall have the right and duty to defend any suit against the Assured seeking damages on account of such claim, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment, on account of one or more claims to which this insurance applies, of judgments or settlements or of sums described in the "Supplementary Payments" provision, or both.

EXCLUSIONS

A.    Any claim arising out of:

1.    Bodily Injury or Property Damage;

2.    Any dishonest, fraudulent, criminal or malicious act or out of libel, slander, discrimination or humiliation;

3.    The failure of any investment or savings program to perform as represented by an assured;

4.    Advices given by an Assured to an employee to participate or not to participate in any investment or savings program;

B.    Any claim arising out of the failure of the Assured, or any Assurer, fiduciary trustee or fiscal agent, to perform any of their obligations or to fulfill any of their guarantees with respect to:

1.    The payment of benefits under Employee Benefit Programs; or

2.    The providing, handling or investment of funds related thereto.

II.    LIMITS OF LIABILITY - DEDUCTIBLE

Regardless of the number of assureds under this policy, or claims made or suits brought against on account of alleged acts or omission by an assured, the Company's liability is limited as follows:

---

53677 (10/00)

# American International Marine Agency

With respect to this insurance, the limit of liability stated in the schedule as applicable to "each claim" is the total limit of the Company's liability, including liability for all damages and for all costs, expenses and premiums for release of attachment or appeal bonds described in the "Supplementary Payments" provisions and incurred in accordance therewith, on account of each claim to which this insurance applies.

For the purpose of applying the limits of the Company's liability, all damages claimed by one employee as the result of a series of acts or omissions shall be considered as comprising one claim.

The sum of **$As per policy** shall be deducted from the total amount of damages, exclusive of such costs, expenses and premises, on account of each occurrence. All the terms of this insurance apply irrespective of the application of the deductible amount and the Company may pay any part or all of the deductible amount to effect settlement of any claim or suit, and, upon notification of the action taken, the Assured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

The limit of liability stated in the schedule as "aggregate" is, subject to the above provision respecting "each claim", the total limit of the Company's liability, including liability for all damages and for all such costs, expenses and bond premiums incurred, on account of all claims to which this insurance applies.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of this policy):

A. **"Administration"** means:

1. giving counsel to employees of the Named Assured including the employee's dependents and beneficiaries with respect to eligibility in or scope of employee benefit programs available to such employee by virtue of his employment by the Named Assured;

2. Handling of records in connection with employee benefit programs;

3. Effecting or terminating enrollment of any employee of the Named Assured under employee benefit programs;

Provided all such acts are authorized by the Named Assured.

B. **"Employee Benefit Programs"** means a formal program or programs of employee benefits maintained in connection with the business or operations of the Named Assured covered by the Bodily Injury and Property Damage Liability Coverages in this policy, such as but not limited to Group Life Insurance, Group Accident & Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workers Compensation, Unemployment Insurance, Social Security and Disability Benefits.

## IV. CONDITIONS

A. All of the conditions of this policy apply to this insurance except "Financial Responsibility Laws" and "Other Insurance".

B. Excess Insurance

This insurance shall be excess insurance over any other valid and collectible insurance available to the Assured.

**NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR CHANGE ANY OF THE TERMS, LIMITS OR CONDITIONS OF THE POLICY EXCEPT AS HEREIN ABOVE SET FORTH.**

_____

AUTHORIZED SIGNATURE
AMERICAN INTERNATIONAL MARINE AGENCY



# American International Marine Agency

ENDORSEMENT NO.: 4                    EFFECTIVE: 12:01 A.M., January 1, 2003.

ATTACHED TO AND FORMING PART OF POLICY NO.: B2291.

OF THE: AMERICAN HOME ASSURANCE COMPANY.

ISSUED TO: AGM Marine Contractors, Inc.

---

### ACTION OVER/INDEMNITY BUYBACK (WITH BODILY INJURY TO DIVERS EXCLUSION)

Effective January 1, 2003 and in consideration of an Additional Premium of $Included, it is understood and agreed that notwithstanding Exclusion e(2) of SECTION 1 – BODILY INJURY AND PROPERTY DAMAGE, but subject to all other terms, conditions, warranties, and limits of liability, this policy is endorsed to indemnify the Assured for amounts for which it shall have become liable to pay and shall have paid on account of investigation, defense and indemnity as respects it responsibilities, if any, to third parties by virtue of defense and indemnity obligations assumed under written contract or agreement and arising from accidental death of or bodily or personal injury to or illness of any employee(s) of the Assured, except insofar as same may arise from occupational disease.

Notwithstanding the above, it is further understood and agreed that,

1) this policy shall not apply to any liability for loss of life, bodily injury, or personal injury to employees of the Assured or the Assured's subcontractors, while such persons are performing commercial, recreational, or other "diving operations" while in the course of employment by the Assured or the Assured's subcontractors; AND

2) this policy shall not apply to any liability for loss of life, bodily injury or personal injury to any other persons while such persons are performing commercial, recreational, or other "diving operations" conducted on or from any watercraft owned, operated, or controlled by the Assured or the Assured's subcontractors.

Definitions:

"diving operations":    Operations which involve a person (or persons) using an apparatus, which supplies compressed breathing gas at the ambient pressure, including but not limited to, while working in water or in "hyperbaric conditions".

"hyperbaric conditions":   Pressure conditions in excess of surface pressure.

ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED SIGNATURE
AMERICAN INTERNATIONAL MARINE AGENCY

I677 (10/00)

 # American International Marine Agency

ENDORSEMENT NO.: <u>5</u>                    EFFECTIVE: 12:01 A.M., <u>January 1, 2003</u>.

ATTACHED TO AND FORMING PART OF POLICY NO.: <u>B2291</u>.

OF THE: <u>AMERICAN HOME ASSURANCE COMPANY</u>.

ISSUED TO: <u>AGM Marine Contractors, Inc.</u>

---

## SCHEDULE OF NAMED ASSUREDS

1) AGM Marine Contractors, Inc.

2) New Bedford Fish Island Nominee Trustee - John Mikutowicz, Trustee
Fish Island
New Bedford, MA

3) 30 Echo Road Realty Trust – John Mikutowicz, Trustee

4) Felix Management, Inc.

ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED SIGNATURE
AMERICAN INTERNATIONAL MARINE AGENCY

677 (10/00)

 # American International Marine Agency

ENDORSEMENT NO.: 6                        EFFECTIVE: 12:01 A.M., January 1, 2003.

ATTACHED TO AND FORMING PART OF POLICY NO.: B2291.

OF THE: AMERICAN HOME ASSURANCE COMPANY.

ISSUED TO: AGM Marine Contractors, Inc.

---

## TERRORISM EXCLUSION

This insurance does not apply to loss arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

The following Section 102 definition of "act of terrorism" from the Terrorism Risk Insurance Act of 2002 applies:

(1) Act of Terrorism –
    (A) Certification. – The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States --
        (i) to be an act of terrorism;

        (ii) to be a violent act or an act that is dangerous to --

            (I)     human life;

            (II)    property; or

            (III)   infrastructure;

        (iii) to have resulted in damage within the United States, or outside of the United States in the case of --

            (I)  an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];

            (II) the premises of a United States mission; and

        (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    (B) Limitation. -- No act shall be certified by the Secretary as an act of terrorism if --

        (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

        (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

    (C) Determinations Final. – Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
    (D) Nondelegation. – The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED SIGNATURE
AMERICAN INTERNATIONAL MARINE AGENCY

---

3677 (10/00)