# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY,    ) ) ) | |
|       Plaintiff,    ) ) | |
| v.    ) ) | CIVIL ACTION NO. 04-11382-EFH |
| AGM MARINE CONTRACTORS, INC.,    ) ) ) | |
|       Defendant.    ) ) | |

AGM MARINE CONTRACTORS, INC.'S REPLY BRIEF TO AMERICAN HOME
ASSURANCE COMPANY'S OPPOSITION AND CROSS- MOTION
FOR SUMMARY JUDGMENT

Now comes Defendant AGM Marine Contractors, Inc. ("AGM") and hereby submits this

brief in reply to American Home Assurance Company's ("American") Opposition to AGM's

Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment. AGM

submits that American has mischaracterized certain facts and arguments made by AGM and

made further legal arguments to which a response by AGM will assist the Court in making a

coverage determination with respect to the insurance policy at issue in this action.

AGM replies as follows:

1.      While Southeast Floating Docks, Inc. ("Southeast") provided the floating docks

pursuant to a purchase order with AGM, the simple fact that the purchase order form identifies

Southeast as a vendor rather than a subcontractor does not control. As stated in the

uncontroverted Affidavit of John Mikutowicz submitted by AGM, Southeast was charged with

the responsibility of engineering, designing and manufacturing the floating docks to meet the

1

performance specifications issued by the Town of Provincetown (the "Town"), the docks were

not off-the-shelf items, but were custom designed and fabricated specially for this project, thus

rendering Southeast a subcontractor. See Limbach Co., LLC v. Zurich American Ins. Co., 396

F.3d 358 (4th Cir. 2005)(per curiam); Mikutowicz Aff. at 4. American has failed to engage in

the analysis of whether Southeast was a subcontractor, ignoring the significant custom work

undertaken by Southeast, which such work was an obligation of AGM assigned and

subcontracted to Southeast for completion. American's assertion that Southeast is merely a

supplier of a mass-produced product is not supported by the uncontroverted evidence, the Policy

or case law.

2.      It has been determined that the Docks' failure resulted from a change – by the

subcontractor – of the finger float connections, as well as the deletion of reinforcing material in

the floating docks, despite Southeast's own engineering and design requiring same. See Gary

Greene Report dated June 29, 2004, a true and accurate copy of which is attached hereto as

Exhibit A. Such defects were not apparent to AGM or the Town until the Storm damage

occurred. American has submitted no evidence that suggests, much less demonstrates, that

AGM's work caused the dock failure.

3.      The docks suffered damage resulting from an occurrence, as defined by the

Policy. The unexpected winter storm and resulting physical damage to the Docks constituted

such an occurrence. While winter storms are a fact of life in New England, the occurrence

herein is the failure of the docks during the course of the storm. Moreover, Southeast's failure to

adequately design and manufacture the docks to meet the Town's specifications constitutes a

further occurrence under the policy for which AGM is entitled to coverage, as the docks'

noncompliance with the Town's specifications or Southeast's own engineer's design was neither

expected, nor intended, nor controlled by AGM. See Fidelity & Deposit Co. of Maryland v. Hartford Casualty Ins. Co., 189 F.Supp.2d 1212 (D.Kan 2002) and cases cited at pp. 9-11 of AGM's initial memorandum.

      4.      While American cites case law regarding the general intent and purpose of liability insurance policies to not insure against so-called "business risks," ultimately the scope of coverage here must be determined by reference to the terms of the Policy itself. MacArthur v. Mass. Hosp. Serv., Inc., 343 Mass. 670, 672 (1962). The cases cited by American in support of its asserted application of the general theory of a "business risk" exclusion underlying the Policy are, however, inapposite, as the policies referenced in those cases did not include the same exclusions as the Policy and/or did not include optional Products-Complete Operations Hazard coverage. See Dorchester Mutual Fire Insurance Co. v. First Kostas Corp., Inc., 49 Mass.App.Ct. 651 (2000)(deciding case upon the "impaired property" exclusion and containing no products-completed operations coverage); Donovan v. Commercial Union Insurance Co., 44 Mass.App.Ct. 596 (1998)(no products-completed operations hazard coverage and no subcontractor exclusion). Even the cases cited by American suggest that occurrences which are not under the control or management of an insured or which an insured cannot reduce or avoid as a result of its business operations are intended to be covered under a commercial liability policy. See Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316 (1983). The risk of defect in work performed by an independent subcontractor is just such a risk, and is beyond the control of the general contractor.

      The Policy as issue here expressly recognizes and carves out work performed by a subcontractor from one of the typical "business risk exclusions," as such subcontracted work was outside of the control of AGM; such risks were not part of AGM's business operations and

damages caused by defective subcontractor's work could open AGM up to almost limitless, uncontrollable risk for which it purchased insurance.  American's cite to Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87 (1995) thus fails to advance its case.  The Betty Caplette Court involved a house built and subsequently sold by the defendant general contractor, which house contained a defective septic system installed by subcontractors.  See Id. At 88.[1] The insurer conceded that if the house were not sold as a completed product, and was, instead, subject to the "your work" exclusion, coverage would be provided.  See Id. At 89.  Moreover, Betty Caplette is further distinguishable by the absence of the subcontractor's work exclusion and Products-Completed Operations Hazard provisions present in AGM's Policy.

5.    American misleads this Court by citation to case law where coverage was sought to replace the contractor's *own* faulty work, case law which is clearly distinguishable from the instant action where a subcontractor exclusion exists in AGM's Policy and it is the subcontractor's faulty work that resulted in the physical loss and damage for which AGM seeks coverage under the Policy.  See Frankel v. J. Watson Co., Inc., 21 Mass.App.Ct. 43 (1986); Lerner Corp. v. Assurance Co. of America, 120 Md. App. 525, 707 A.2d 906 (1988); Lusalon, Inc. v. Hartford Accident and Indemnity Co., 400 Mass. 767 (1987); Sapp v. State Farm Fire & Casualty Co., 486 S.E.2d 71, 226 Ga.App. 200 (Ga. 1997); Standard Fire Insurance Co. v. Chester-O'Donley & Assoc., Inc., 972 S.W.2d 1 (1998); R.N. Thompson & Assoc., Inc. v. Monroe Guaranty Insurance Co., 686 N.E.2d 160 (Ind. 1997); United States Fidelity & Guaranty Corp. v. Advance Roofing & Supply Co., Inc., 788 P.2d 1227, 163 Ariz. 476 (1990).  AGM clearly suffered an occurrence and damage at the hands of a subcontractor, which loss was

---

[1] The Betty Caplette Court found the residence constructed by the contractor to be a "product" by strict application of the policy definition for same, indicating that products are "sold."  In this case, there is no evidence that AGM manufactured or sold a product, instead AGM provided labor and services and materials in connection with the reconstruction of Macmillan Pier.

clearly outside of its risk and control and for which coverage is be afforded. See Fidelity &

Deposit Co. of Maryland v. Hartford Casualty Ins. Co., 189 F.Supp.2d 1212 (D.Kan 2002);

Travelers Ins. Companies v. Penda Corp., 974 F.2d 823 (7th Cir. 1992). Coverage under an

exclusionary endorsement is dependant upon the factual situation. See Bond Bros. v. Robinson,

393 Mass. 546, 547-48 (1984); Vinsant Elec. Contractors v. Aetna Cas. & Sur. Co., 530 S.W.2d

76, 78 (Tenn. 1975). AGM has demonstrated, by uncontroverted evidence, that the cause of the

property damage was outside of its control and that all damages resulted from the acts and/or

omissions of its subcontractor.

   Davenport v. United States Fidelity and Guaranty Co.,[2] involved a subcontractor seeking

coverage under its own CGL policy for its faulty painting work, where no products-completed

operations hazard coverage was present. The Davenport Court, in discussing the provision

excluding "property damage to your work arising out of it or any party[sic] of it and included in

the products-completed operations hazard," found such a provision excludes coverage for

damage to the insured's own work which occurs after the job is completed. See Id. What this

suggests is that damage to an insured's work after completion of the job *would* be covered if the

work was performed by a subcontractor and if the insured had purchased products-completed

operations hazard coverage.

   6.     AGM did not provide a product to the Town and exclusions in the Policy relating

to the insured's "Product" are inapplicable. There was no change in ownership of any real

property, unlike those cases involving construction of residential homes or structures, such as

Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87 (1995) or Indiana Insurance

---

[2] Davenport is an unpublished opinion of the Massachusetts Appeals Court and, as such, is to be given no precedential weight. Rule 1:28 of the Massachusetts Appeals Court Rules for the Regulation of Appellate Practice allows for a summary disposition by a panel of justices; the unpublished opinions issued pursuant to such rule may not be relied upon or cited as authority in other cases. Mark J. Horner v. Boston Edison Company, 45 Mass.App.Ct. 139 (1998).

Co v. DeZutti, 408 N.E.2d 1275 (Ind. 1980). AGM provided labor, materials and equipment in

the betterment of the Town's property, which such action constitutes "Work" under the terms of

the Policy. A custom designed and built pier and dock system is not a mass-produced product

for purposes of product liability law and in ordinary language a construction project is built,

constructed or erected and not manufactured. See Mid-United Contractors, Inc. v. Providence

Lloyd's Ins. Co., 754 S.W.2d 824, 826 (Tex. App. 1988).

     The Policy defines the "Assured's Product" to include goods or products…

manufactured, sold, handled, distributed or disposed of by…[t]he Assured." AGM did not

manufacture, sell, distribute or dispose of the floating docks. American's cite to Sapp v. State

Farm Fire & Casualty Co., 486 S.E.2d 71, 226 Ga.App. 200 (Ga. 1997) is particularly

incongruous and out of context, as the Sapp court concluded that, while the terms of the policy

there and its "business risk" exclusions were designed to exclude coverage for defective

workmanship and damage to the construction project itself, the appellant contractor performed

and provided "work" in connection with its repair, replacement and installation of certain wood

flooring, floor joists and correction of moisture problems. The Sapp Court made no ruling or

determination that the contractor provided any "product" in connection with said construction

project. Accordingly, American has failed to identify any precedent suggesting that the

provision of labor, materials and equipment by AGM and its subcontractor in connection with

construction of the dock and pier system constitutes a "Product" under the Policy. Similarly,

Indiana Insurance Co v. DeZutti, 408 N.E.2d 1275 (Ind. 1980) suggests that damages or defects

to a contractor's construction project falls within the "work" exclusion rather than the "product"

exclusion.

7.    American attempts to obscure the application of the Policy's Products-Completed Operations Hazard provision by citing cases which relate to policies which did not involve such additional coverage.  As was clearly stated in Pursell Constr., Inc. v. Hawkeye-Security Insurance Co., 596 N.W.2d 67, 69 (Iowa 1999):

> a "CGL policy… has exclusions that take away some… coverage.  The PCOH [Products-Completed Operations Hazard] provision is an exception to these exclusions.  Or, stated in another way, the PCOH provision is simply a category of losses that are covered even though these losses might otherwise be excluded."

American fails to address AGM's argument that the Policy does not provide separate exclusions for the Completed Operations coverage, and, as such, the Policy exclusions do not apply to the Products-Completed Operations Hazard coverage.  The Court in Mike Hooks, Inc. v. Jaco Services, Inc., 674 So.2d 1125 (La. Ct. App. 3rd Cir. 1996) found coverage under a policy that clearly provides for products-completed operations coverage and then attempts to exclude such coverage for "'[p]roperty damage' to the 'Assured's work' arising out of it or any part of it and included in the 'products-completed operations hazard'".  See also Kidd v. Logan M. Killen, Inc., 640 So.2d 616 (La. Ct. App. 1st Cir. 1994), Gaylord Chemical Corp. v. ProPump, Inc., 753 So.2d 349 (La. Ct. App. 1st Cir. 2000) and Rando v. Top Notch Properties, L.L.C., 879 So.2d 821 (La. Ct. App. 4th Cir. 2004).  Thus, property damage to AGM's work arising out of it or any part of it is included within the optional Products-Completed Operations Hazard coverage, and the exclusion asserted by American is inapplicable.  AGM is entitled to a declaration of coverage for the claims it has asserted, as ambiguities must be resolved against the insurance company which drafted the Policy and in favor of the insured.  August A. Busch & Co. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959).

#536060                                          7

Respectfully submitted,

**AGM MARINE CONTRACTORS, INC.**

By its attorneys,

_/s/ Jeremy Blackowicz_
Eric Eisenberg, Esq. (BBO #544682)
Jeremy Blackowicz, Esq. (BBO #650945)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
(617) 345-9000

DATED: July 6, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2005, I have served a true copy of the above document, via first-class mail, postage pre-paid, and facsimile to the following counsel of record:

Robert Murphy, Esq.
Holbrook & Murphy
150 Federal Street
Boston, MA 02110

**/s/** Jeremy Blackowicz
Jeremy Blackowicz

#536060                    8