UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

AMERICAN HOME ASSURANCE
COMPANY,
                    Plaintiff

                                          CIVIL ACTION NO.:
            v.                              04-11382-EFH

AGM MARINE CONTRACTORS, INC.,
                    Defendant.

---

## MEMORANDUM AND ORDER

July 25, 2005

HARRINGTON, S.D.J.

Before the Court are the parties' cross-motions for summary judgment.  Petitioner

American Home Assurance Company brought this declaratory-judgment action requesting the

Court to declare that Commercial Marine Liability Policy B2991 (hereinafter, "the Policy") issued

to Respondent AGM Marine Contractors, Inc., did not cover respondent's claims relating to

physical damage to concrete floating docks installed by respondent.  For the reasons stated below,

the Court grants petitioner's motion for summary judgment and denies respondent's summary

judgment motion.

"A motion for summary judgment should be granted when the evidence, taken in the light

most favorable to the non-moving party, shows that there is no genuine issue of material fact and

that the moving party is entitled to judgment as a matter of law."  See Rocafort v. IBM Corp.,

334 F.3d 115, 119 (1st Cir. 2003).  "The responsibility of construing the language of an insurance

contract is a question of law for the trial judge." Cody v. Conn. Gen. Life Ins. Co., 387 Mass.

142, 146, 439 N.E.2d 234, 237 (1982). "The interpretation of an insurance contract is no

different from the interpretation of any other contract, and we must construe the words of the

policy in their usual and ordinary sense." Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass.

275, 280, 675 N.E.2d 1161, 1164 (1997). "But, if the contract is ambiguous, 'doubts as to the

[ . . . ] meaning of the words must be resolved against the insurance company that employed them

and in favor of the insured.'" Cody, 387 Mass. at 146, 439 N.E.2d at 237 (quoting August A.

Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243, 158 N.E.2d 351, 353

(1959)).

Here, section 1.1(a) of the policy provides coverage for "'property damage' to which this

insurance applies." Section 1.1(b) of the policy goes on to say that "[t]his insurance applies to . . .

'property damage' only if . . . [t]he . . . 'property damage' is caused by an 'occurrence' that takes

place in the 'coverage territory.'" In turn, section 8.14 of the policy defines "occurrence" as "an

accident, including continuous or repeated exposure to substantially the same general harmful

conditions." Although the policy does not define "accident," the parties, in their memoranda and

at oral argument, defined it as a "fortuitous event."

Here, it is undisputed that only the floating docks themselves sustained property damage

and that this damage resulted from faulty workmanship. "Most policies of commercial general

liability insurance exclude the insured's faulty workmanship from coverage. The rationale for

such exclusions is that faulty workmanship is not an insurable 'fortuitous event,' but a business

risk to be borne by the insured." 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance

§ 129:11 (3d ed. 1997) [hereinafter Couch] (collecting cases). Massachusetts courts have

adopted this rationale and held that faulty workmanship fails to constitute an accidental

occurrence in a commercial general liability policy.  See Davenport v. U.S. Fidelity & Guar. Co.,

56 Mass. App. Ct. 1109, 778 N.E.2d 1038, 2002 WL 31549391, at *1 (2002) ("Faulty

workmanship, alone, is not an 'occurrence' as defined in the [general commercial liability] policy;

nor does the cost to repair the defective work constitute property damage.") (unpublished

decision).  Accordingly, the Court rules that the faulty workmanship here does not constitute an

occurrence and, therefore, there is no coverage under the policy.

Nevertheless, for the sake of completeness, the Court will briefly address respondent's

remaining arguments.  Initially, the Court notes that respondent is not entitled to coverage under

the "products-completed operations hazard" provision.  Section 8.17 of the policy defines

"[p]roducts-completed operations hazard" as including "'property damage' occurring away from

premises the Assured owns or rents and arising out of 'the Assured's product' or 'the Assured's

work' except . . . [p]roducts that are still in the Assured's physical possession . . . or . . . [w]ork

that has not yet been completed or abandoned."

Aside from section 8.17, there are two relevant policy provisions mentioning the

"products-completed operations hazard" provision.  The first is section 1.2(k), the "Assured's

work" exclusion, which provides:  "[t]his insurance does not apply to . . . '[p]roperty damage' to

'the Assured's work' arising out of it or any part of it and included in the 'products-completed

operations hazard.'"  The second provision, section 1.2(i)(6), the "Damage to Property"

exclusion, states that "[t]his insurance does not apply to . . . '[p]roperty damage' to . . . [t]hat

particular part of any property that must be restored, repaired or replaced because 'the Assured's

work' was incorrectly performed on it."  Thereafter, the section proceeds to clarify that

-3-

"[p]aragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'"

Relying in part on two Court of Appeal of Louisiana cases, Mike Hooks, Inc. v. Jaco Servs., Inc., 674 So. 2d 1125, 1127-28 (La. Ct. App. 1996) and Kidd v. Logan M. Killen, Inc., 640 So. 2d 616, 621 (La. Ct. App. 1994), respondent argues that the "products-completed operations hazard" provision affords coverage as a matter of law, or, at the very least, creates an ambiguity that must be resolved in favor of the insured.

Notwithstanding respondent's arguments to the contrary, the "products-completed operations hazard" provision does not entitle respondent to coverage.  This provision merely affords the same type of coverage for damages occurring after completion of the insured's work and away from the insured's premises.  See generally 9 Couch, supra, § 129:14.  The "products-completed operations hazard" provision is not a separate policy but a subpart of the entire policy. See Hawkeye Security Ins. Co. v. Davis, 6 S.W.3d 419, 425 (Mo. Ct. App. 1999).  This provision, when properly construed as a subpart of the entire policy, describes coverage within the policy for the same type of injuries or damages covered by the rest of the policy, save for a different period of time.  See id.  Applying this reasoning to the policy at issue in this case, nothing in the "products-completed operations hazard" provision dispenses with the policy's section 1.1 requirement that an "occurrence" cause the property damage.

In addition, the "products-completed operations hazard" provision does not create an ambiguity.  Citing Mike Hooks and Kidd, respondent appears to contend that the policy is ambiguous because the two exclusions quoted above take away coverage afforded by the "products-completed operations hazard" provision.  But other courts, including the Court of

-4-

Appeal of Louisiana, have criticized the reasoning of <u>Mike Hooks</u> and <u>Kidd</u>.  <u>See</u> <u>Joe Banks</u>

<u>Drywall & Acoustics, Inc. v. Transcontinental Ins. Co.</u>, 753 So. 2d 980, 985 (La. Ct. App. 2000)

(criticizing <u>Mike Hooks</u> and <u>Kidd</u>); <u>Hawkeye</u>, 6 S.W.3d at 424-25 & n.4 (same).  According to

the <u>Joe Banks</u> opinion, "<u>Mike Hooks</u> failed to recognize that . . . the insurer covered risks

unrelated to repair or replacement of the insured's work, such as claims for injury to persons and

other property that commonly are asserted to arise out of defective work or products."  <u>See</u> <u>Joe</u>

<u>Banks</u>, 753 So. 2d at 985.  Similarly, the policy at issue here is not ambiguous because —

notwithstanding <u>Mike Hooks</u> and <u>Kidd</u> — the two exclusions quoted above do not eliminate all

the risks covered by the "products-completed operations hazard" provision.  This provision, when

read with the two exclusions, does not provide coverage for faulty workmanship; instead, it

unambiguously provides coverage for damages to persons or other property occurring after

completion of the insured's work and away from the insured's premises.  <u>See</u> <u>Joe Banks</u>, 753 So.

2d at 985.

       Finally, there is no coverage under the "subcontractor" exception to the "Assured's work"

exclusion found in section 1.2(k).  Even if the Court were to accept respondent's argument that

the faulty workmanship was performed by a subcontractor, this argument would prove, at most,

that the "Assured's work" exclusion is inapplicable.  The subcontractor exception to the

"Assured's work" exclusion cannot create coverage where — because of the absence of an

"occurrence" — none exists.  <u>See</u> <u>Donovan v. Commercial Union Ins. Co.</u>, 44 Mass. App. Ct.

596, 602, 692 N.E.2d 536, 540 (1998) (recognizing "'basic principle that exclusion clauses

subtract from coverage rather than grant it'").

Moreover, section 1.2(j) of the policy specifically excludes "'[p]roperty damage' to 'the Assured's product' arising out of it or any part of it." Section 8.22 defines the "Assured's product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [t]he Assured." Here, "the Assured's product" definition applies to the floating docks because they were "handled" by respondent. Therefore, even if the faulty workmanship did in fact constitute an "occurrence" or fall within the subcontractor exception, there would still be no coverage due to this exclusion. See Bond Bros., Inc. v. Robinson, 393 Mass. 546, 549, 471 N.E.2d 1332, 1334 (1984) ("No insured in these circumstances can reasonably conclude that the exception to [the] exclusion . . . makes irrelevant another exclusion in the policy that explicitly denies coverage."); Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 795 (N.J. 1979) ("If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions.").

In summary, because there was no "occurrence," the Court declares that the policy did not afford coverage for the damage to the floating docks. Accordingly, the Court grants petitioner's motion for summary judgment and denies respondent's summary judgment motion.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge